STATE of Utah, Plaintiff and Respondent,

v.

David M. HANSEN, Defendant and Appellant.

No. 19894.

Supreme Court of Utah.

Nov. 5, 1986.

Martin W. Custen, Ogden, for defendant and appellant.

David L. Wilkinson, Atty. Gen., J. Stephen Mikita, Salt Lake City, for plaintiff and respondent.

ZIMMERMAN, Justice:

Defendant David M. Hansen appeals from a conviction of murder in the first degree, a capital felony under section 76–5–202(1)(d) of the Utah Code. Hansen's principal claims of error are that the trial court improperly refused to give his proposed instruction on felony-murder, a second degree felony, and that the court erred in giving an instruction, sua sponte, on withdrawal from the commission of a crime and an instruction on accomplice liability. We hold that the failure to give defendant's requested instruction on felony-murder, a second degree felony, was prejudicial error and reverse and remand for a new trial.

On February 1, 1983, defendant Hansen and his original co-defendant, Joseph Rocco,[1] went to David Stewart's house, hogtied Mr. Stewart, and stole a number of items of personal property. The house was then set on fire. Stewart died from burns and carbon monoxide poisoning. Following this incident, Rocco and Hansen immediately drove to Neil Shock's house, where they tied up Shock and stole personal property. This house also was set on fire. After Hansen and Rocco left in Shock's car, Shock untied himself and escaped from the burning house. The car was found later, destroyed by fire.

Hansen was charged with first degree murder under section 76–5–202(1)(d) of the Code, which is punishable by death or life imprisonment.[2] Specifically, the State contended that Hansen intentionally or knowingly killed Stewart during the commission of the felony of aggravated arson.

At trial, the State presented evidence tending to prove that during the episode, Hansen committed robbery and burglary, as well as arson. Hansen testified in his own behalf and admitted that he held a gun on Stewart and that he tied him up. Hansen also admitted that he stole property from Stewart. However, Hansen claimed that Stewart was tied up only to permit the successful completion of the burglary/robbery and that while he was searching the house for property, he became aware that

1. Rocco and Hansen were originally charged together. Their trials were later severed.

2. Section 76–5–202 reads in pertinent part:
   (1) Criminal homicide constitutes murder in the first degree if the actor intentionally or knowingly causes the death of another under any of the following circumstances:
   . . . .

   (d) The homicide was committed while the actor was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit, aggravated robbery, robbery, . . . aggravated arson, arson, aggravated burglary, burglary. . . .
   U.C.A., 1953, § 76–5–202(1)(d) (1978 ed.).

Rocco had set it on fire, which led Hansen to panic and flee. He denied being an accomplice to the arson, being present when the fire was set, or sharing Rocco's intent or knowledge that Stewart would be killed as a result. His theory was that his intentional conduct only involved tying up Stewart during the course of the burglary/robbery and that the failure to untie Stewart, although the cause of Stewart's death, was a result of panic after discovery of the fire rather than an intent to kill Stewart.

At the conclusion of the evidence, the trial court instructed the jury on the charged offense of first degree murder—a knowing or intentional killing committed during the course of an aggravated arson. Consistent with Hansen's testimony about his participation in the crimes, the defense proposed a jury instruction on the lesser included offense of felony-murder, a second degree murder punishable by one to fifteen years in prison. U.C.A., 1953, § 76–3–203(2) (1978 ed., Supp.1986).[3] The proffered instruction laid out the statutory elements of felony-murder and wove these elements into Hansen's theory that he did not knowingly or intentionally kill Stewart, but was guilty only of an unintentional killing that occurred during the course of a robbery or burglary.[4]

The proffered felony-murder instruction was refused on the grounds that Hansen was charged with an intentional killing in the course of an arson, not an unintentional killing in the course of a burglary or robbery, and that the requested instruction would add a new element—robbery or burglary—to the offense charged. Instead, the court gave two other lesser included offense instructions, one that did cover fel-ony-murder, but was premised on an unintentional killing occurring during the course of an aggravated arson, and another on manslaughter, premised on an unintentional killing occurring as a result of a recklessly set fire. The court also gave two instructions to which Hansen took exception. The first described the circumstances under which one could avoid being convicted of a crime by withdrawing from the criminal undertaking. The second instruction described the criteria for holding one responsible as an accomplice for crimes committed by the principal.

The jury returned a verdict of guilty of first degree murder. During the penalty phase, the jury was unable to reach a unanimous verdict on the death penalty and Hansen was given a life sentence. Hansen now appeals.

Hansen's principal contention is that the trial court erred in not giving his requested lesser included offense instruction on felony-murder, which would have permitted the jury to find him guilty of an unintentional killing that occurred in the commission of robbery, aggravated robbery, burglary or aggravated burglary. Instructions on lesser included offenses are specifically provided for in section 76–1–402 of the Code:

(3) A defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense. An offense is so included when:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(b) It constitutes an attempt, solicitation, conspiracy, or form of preparation to commit the offense charged or

....

(d) While in the commission, attempted commission, or immediate flight from the commission or attempted commission of aggravated robbery, robbery ... aggravated arson, arson, aggravated burglary, burglary ... *causes the death of another person other than a party.*

U.C.A., 1953, § 76–5–203 (1978 ed.) (emphasis added).

---

**3.** From the facts of this case, it is apparent that if convicted under felony-murder, Hansen would be subject to the mandatory one-year consecutive prison term for use of a firearm in commission of a second degree felony, with the possibility that the trial court could extend that consecutive term for up to five years. U.C.A., 1953, § 76–3–203(2) (1978 ed., Supp.1986).

**4.** Section 76–5–203 provides in pertinent part: (1) Criminal homicide constitutes murder in the second degree if the actor:

an offense otherwise included therein; or

(c) It is specifically designated by statute as a lesser included offense.

(4) The court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

U.C.A., 1953, § 76-1-402 (1978 ed.).

In *State v. Baker*, 671 P.2d 152 (Utah 1983), this Court interpreted section 76-1-402(3), (4) and spelled out the standard for determining whether to instruct a jury on a lesser included offense. *Baker* requires that when a defendant requests such an instruction, it must be given if (i) the statutory elements of greater and lesser included offenses overlap to some degree, and (ii) the evidence provides a "rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." 671 P.2d at 159, *quoting* § 76-1-402(4).[5]

■ In defending the trial court's refusal to give the lesser included instruction, the State contends that the first element of the *Baker* test is not satisfied: there are no overlapping elements between a charge of an intentional killing committed in the commission of an aggravated arson, on the one hand, and a charge of an unintentional killing committed in the commission of aggravated robbery or burglary, on the other. This argument is without merit. It is true that burglary and arson, standing alone, may not have overlapping elements. It is also true that one charge involves an intentional killing, while the other, an unintentional killing. But the test is whether the elements overlap at all. Here, the killing itself is a common or overlapping element of each crime.

The second element of the *Baker* test also was satisfied: the evidence provided a rational basis for the jury to acquit on the first degree murder charge and convict on the requested second degree murder charge. On the facts before it, if the jury believed Hansen's testimony, it could rationally have found (i) that he was not guilty of arson and did not have the mental state required for first degree murder, but (ii) that Hansen did commit robbery or burglary, that Stewart was killed during the course of that crime, and that Hansen did not intend or know that Stewart's death would result. This would warrant a verdict of guilty on Hansen's requested felony-murder instruction. Since both elements of the *Baker* test were met, the lesser included offense instruction should have been given.

■ The requirements of *Baker* for the inclusion of a lesser included offense instruction requested by the defendant should be liberally construed. "Society has a legitimate interest in the jury's freedom to act according to the evidence." *People v. Chamblis*, 395 Mich. 408, 426, 236 N.W.2d 473, 482 (1975), *quoted in People v. Geiger*, 35 Cal.3d 510, 523, 199 Cal.Rptr. 45, 52, 674 P.2d 1303, 1310 (1984). Where the defendant requests an instruction of a lesser included or a related offense and where there is some rational basis in the evidence on which the jury could find as the defendant requests, the instruction must be given. *State v. Crick*, 675 P.2d 527, 538 (Utah 1983) (Stewart, J., dissenting). The rule of *Baker* is not a mere technical rule designed to trip up judges and prosecutors. It serves a fundamental policy of permitting the jury to find a defendant guilty of any offense that fits the facts, rather than forcing it to elect between the charges the prosecutor chooses to file and an acquittal. As we recognized in *Baker*, "[w]here one of the elements of the offense charged remains in doubt but the defendant is plainly guilty of *some*

---

5. *Baker* also indicated that a stricter standard is used when the prosecution, as opposed to the defense, requests a lesser included offense instruction. Then "both the legal elements and the actual evidence or inferences needed to demonstrate those elements must *necessarily be included* within the original charged offense."

*Baker*, 671 P.2d at 156 (emphasis in original). In other words, an instruction on the lesser offense should be given at the prosecution's request only if the greater offense could not be committed without also committing the lesser offense. *Id.*

offense, the jury is likely to resolve its doubts in favor of conviction." 671 P.2d at 157, *quoting Keeble v. United States,* 412 U.S. 205, 212–13, 93 S.Ct. 1993, 1994, 36 L.Ed.2d 844 (1973) (emphasis in original).

As an alternative argument in support of the trial court's refusal to give Hansen's requested felony-murder instruction, the State contends that even if the *Baker* test is met, Hansen was not entitled to *any* felony-murder instruction because Hansen could not be convicted of that crime. This argument is premised on the construction we gave section 76–5–203(1)(d) in *State v. Norton,* 675 P.2d 577 (Utah 1983).

Section 76–5–203 provides:

(1) Criminal homicide constitutes murder in the second degree if the actor:

. . . .

(d) While in the commission, attempted commission, or immediate flight from the commission or attempted commission of aggravated robbery, robbery, rape, forcible sodomy, or aggravated sexual assault, aggravated arson, arson, aggravated burglary, burglary, aggravated kidnapping, or kidnapping, causes the death of another person *other than a party.*

U.C.A., 1953, § 76–5–203 (1978 ed.) (emphasis added). In *State v. Norton,* the defendant shot two bank tellers in the course of a robbery. Norton was charged with first degree murder. The defense claimed that Norton did not have the intent necessary for first degree murder and proposed a second degree murder jury instruction based on section 76–5–203(1)(d). The defense's theory was that section 76–5–203(1)(d) applied if a killing that was not intentional occurred during the commission

of one of the statutorily enumerated felonies, in this case a robbery. The trial court refused to give the instruction on the grounds that section 76–5–203(1)(d) was inapplicable where a victim of the felony was also the murder victim.

Although the propriety of the trial court's refusal to give the felony-murder instruction was not raised on appeal in *Norton,* this Court reached the issue, sua sponte, and affirmed the trial court's ruling. The Court noted that by its language, the second degree murder provision applies only "when the defendant, during the commission of one of the enumerated felonies, causes the death of 'another person *other than a party.'* " 675 P.2d at 581, *quoting* § 76–5–203(1)(d) (emphasis in original). Noting that no such language was contained in what it saw as the analogous first degree murder provision that also deals with killings committed during the course of certain of the same felonies, section 76–5–202(1)(d), the Court concluded that the "other than a party" language was "to distinguish second degree felony murder from first degree felony murder."[6] 675 P.2d at 581. It then apparently reasoned that killing the victim of an enumerated felony would be first degree, and killing anyone else would be second degree, because it then held that "[f]or purposes of that distinction, a 'party' is a person who is a victim of the enumerated felony." 675 P.2d at 581; *see also Developments,* 1985 Utah L.Rev. 131, 166–71.

Relying on *Norton,* the State argues that Stewart, the victim of the arson and robbery, was a "party" within the meaning of the statute. Therefore, Hansen was not

**6.** The *Norton* opinion refers to first and second degree "felony-murder." This is a convenient way of distinguishing semantically between section 76–5–202(1)(d) and section 76–5–203(1)(d), both of which rely on the fact that the killing occurred during an enumerated felony as a basis for enhancing the available punishment. However, it is a technical misuse of the term "felony-murder." As noted *infra* at page 8, at common law, felony-murder referred to the rule that any killing caused during the commission of a felony was punishable as murder, regardless of the actor's state of mind, while all other homicides chargeable as murder required malice aforethought or some other analogous mental state. 2 C. Torcia, *Wharton's Criminal Law* §§ 137, 139, 145–147 (14th ed. 1979); 1 *Warren on Homicide* §§ 63, 66, 74 (1914 & Supp.1962); W. LaFave & A. Scott, *Criminal Law* §§ 67, 71 (1972). Therefore, to talk of an intentional "felony-murder" is to fuse two unrelated concepts. Technically, the first degree "felony-murder" proscribed by section 76–5–202(1)(d) is simply an intentional killing which would otherwise be second degree murder, but which receives an enhanced punishment as first degree murder because it is committed under certain aggravating circumstances, i.e., during the course of a felony. This confusion of terminology may have led the *Norton* court's analysis astray.

entitled to any felony-murder instruction—not the robbery or burglary-based instruction he asked for, and not the arson-based instruction given by the trial court.

Hansen contends that *Norton*'s construction of section 76–5–203(1)(d) is wrong for two reasons. First, the distinction between first degree murder and second degree murder is not, as the *Norton* court held, that the former protects victims and the latter, all other persons. Rather, the two sections are clearly written so that first degree can be charged only when the killing is intentionally or knowingly caused *and* is committed in the course of an enumerated felony. Section 76–5–203(1) explicitly provides that if the killing is either knowing or intentional, without any other aggravating circumstances (§ 76–5–203(1)(a)), or is unintentional but committed during the course of an enumerated felony (§ 76–5–203(1)(d)), then the charge is second degree murder. Hansen's second challenge to the *Norton* construction of section 76–5–203(1)(d) is that the "other than a party" language has nothing to do with differentiating the coverage of the first and second degree murder statutes, but is traceable to the historical felony-murder rule. Both of Hansen's arguments have merit.

Some background is necessary. Under the early common law, when an actor caused the death of another during the commission or attempted commission of a felony, the actor was guilty of what we now term first degree or capital murder. This was true even if the felony was not of a dangerous nature and even if the killing was entirely unintended. W. LaFave & A. Scott, *Criminal Law* § 71, at 545–46 (1972). This doctrine was known as the felony-murder rule. The common law felony-murder rule also permitted an actor to be charged with murder even if the one killed during the felony was not a victim or a bystander, but a co-felon. For example, the common law provided that if two persons committed a felony and one was accidentally killed, perhaps by police, during the felons' flight from the scene of the crime, the surviving defendant could be charged with murder. *See, e.g., Common-wealth v. Thomas*, 382 Pa. 639, 117 A.2d 204 (1955), *overruled, Commonwealth v. Redline*, 391 Pa. 486, 508–09, 137 A.2d 472, 482 (1958).

In modern times, this rule has been criticized as being overly harsh because many more crimes are now defined as felonies than when the doctrine was developed and because many modern felonies are relatively minor. In addition, the penalties for most felonies are now less severe than those imposed for murder. All of these developments have made dramatic the contrast between the punishment that would ordinarily be imposed for a felonious act and the punishment that might be imposed for the same act under the felony-murder rule, if even an accidental death occurs during the commission of the act. W. LaFave & A. Scott, *Criminal Law* at 546.

Until 1973, Utah had the common law felony-murder rule. U.C.A., 1953, § 76–30–3. In that year, the Utah legislature enacted new murder provisions that diverged from the common law in several respects. *See* 1973 Utah Laws ch. 196, pt. 2. Some of these changes mitigated the harshness of the felony-murder rule. First, the legislation reduced classical felony-murders from first to second degree murder. *Compare* U.C.A., 1953, § 76–30–3 *with* U.C.A., 1953, § 76–5–203(1)(d) (1973 ed.). It also reduced intentional killings from first degree murder to second. *See* § 76–5–203(1)(a). The first degree was reserved for a new category of murders, all of which must be intentional killings but which must also be committed under aggravating circumstances. Among the circumstances specified was that the intentional killing occur during the commission of certain specified felonies. In effect, this new crime category—which *Norton* labeled first degree felony-murder—was an agglomeration of two quite distinct common law concepts. It appears that this new category of first degree murder had its origins in the Model Penal Code. *See* Model Penal Code §§ 210.2, 210.6 (1980) (and Proposed Official Drafts beginning with May 4, 1962).

Second, the 1973 legislation limited the felony-murder doctrine to killings occurring during the course of only a few specified felonies. (At common law, a killing in the course of any felony fell within the rule, although the pre–1973 Utah codification of that common law had also limited the categories of eligible felonies. *See* U.C.A., 1953, §§ 76–30–3, 103–28–3.)

■ Finally, and of particular concern here, the 1973 Utah enactment did not permit the State to charge an actor with a felony-murder if the one killed during the commission of the felony is a co-felon. This is the real purpose of the "other than a party" language in section 76–5–203(1)(d), the second degree felony-murder provision. This limitation is consistent with the principle that a felon should not be held liable for the unintended death of a co-felon who willingly participated in the criminal venture. *See Commonwealth v. Redline*, 391 Pa. 486, 137 A.2d 472 (1958); W. LaFave & A. Scott, *Criminal Law* at 552.[7]

We are aware that prior precedents should not be overruled lightly. However, there are no compelling reasons for adhering to *Norton*'s construction of the felony-murder statute. That case construed the statute incorrectly and without benefit of briefing by the parties. Moreover, the decision is a recent one, and the legislature has not relied upon it in enacting other statutes. *Cf. Mountain States Telephone & Telegraph Co. v. Salt Lake County*, 702 P.2d 113, 116 (Utah 1985). Perhaps most importantly, *Norton*'s interpretation of the "other than a party" language to exclude the victim of the crime from the operation of the statute results in very poor public policy, policy the legislature could not have intended.

For example, if the jury in *Norton* had accepted Norton's argument that the killings committed during the course of the robbery were not intentional because his diminished capacity made it impossible for him to form the mental state necessary for first degree murder, then the rationale adopted by this Court in *Norton* would have prevented him from being convicted of felony-murder under section 76–5–203(1)(d) because the two women killed were victims of the crime; the only crime of which he might properly have been convicted under *Norton* was aggravated robbery. Such a result makes no sense in light of the general purposes of the felony-murder rule and the fact that it appears section 76–5–203(1)(d) was intended only to take some of the harshness out of the felony-murder rule, not to gut it.[8] We therefore hold that the "other than a party" language can only refer to a co-felon and not the victim of the underlying felony. *State v. Norton* is overruled insofar as it is inconsistent with this conclusion.

■ Since Stewart was the victim of and not a party to the underlying felony, section 76–5–203(1)(d) did not preclude Hansen's conviction of felony-murder, either under the arson-based instruction actually given or the robbery- or burglary-based instruction Hansen sought. The trial court therefore erred in refusing to give Hansen's requested instruction.

The next question is whether this error was harmless. We do not reverse a conviction in the absence of error that is " 'substantial and prejudicial in the sense that there is a reasonable likelihood that in its absence there would have been a different

7. While a less than intentional killing of a co-felon during the commission of a felony is not second degree murder simply because it occurred during a felony, it may be some other lesser degree of homicide, depending on the state of mind of the actor. *See, e.g.*, U.C.A., 1953, §§ 76–5–203(1)(b), (c), –205 to –207 (1978 ed. & Supp.1986).

8. Another example may help to illustrate the point. Under *Norton*'s interpretation of the "other than a party" language, a kidnapper whose victim dies of a fright-induced heart at-

tack would not be chargeable with first degree murder because there would be no intent to cause death, and he would also not be chargeable with second degree murder under the felony-murder rule because the dead person was the victim, i.e., a "party." Thus, the charge could be no more than manslaughter. Yet, had it not been for the kidnapping, the victim would not have died. It makes no sense to say that the person whose felonious act puts the victim in a situation that kills him should not be chargeable with felony-murder.

result.'" *State v. Hutchison*, 655 P.2d 635, 636 (Utah 1982), *quoting State v. Urias*, 609 P.2d 1326, 1329 (Utah 1980); *accord State v. Fontana*, 680 P.2d 1042, 1048 (Utah 1984); *State v. Tucker*, 709 P.2d 313, 316 (Utah 1985); *cf.* Utah Rule of Criminal Procedure 30, U.C.A., 1953, § 77-35-30 (1982 ed.). In the present case, the jury was given a felony-murder instruction based on an unintentional killing occurring during an arson and a manslaughter instruction based on a killing caused by a recklessly set fire. The jury did not find Hansen guilty on either charge, but instead opted for the first degree murder charge. Arguably, the jury found Hansen guilty of setting the fire and rejected his claim that he did not know or intend that Stewart be killed. Therefore, the refusal to give Hansen's proposed felony-murder instruction based on robbery or burglary was harmless, since the jury believed Hansen acted with knowledge or intent to kill.

■ The problem with this reasoning is that it ignores the factual interconnection between the wrongful setting of the fire that was supposedly committed under all the given instructions and the killing that actually occurred. As a factual matter, there is no question that Stewart was tied up at the time the fire was set and that his death was caused by the fire, nor is there any real question that either Hansen or Rocco deliberately set the fire. Realistically speaking, then, under the facts presented to the jury, whoever was found responsible for setting the fire almost certainly would have to be found to have at least "knowingly" killed Stewart and, therefore, be convicted of an intentional killing committed during the course of a felony. Conversely, one found not responsible for the fire would have to be acquitted of all charges. The jury was never given the choice of finding that Hansen was not responsible for the fire, yet was still guilty of a felony during which an unintentional killing occurred. Its only choice was to find that he was responsible for the fire that caused the death or to acquit him altogether. This is exactly the sort of forced choice that lesser included offense instructions are designed to avoid, and exactly the

choice that the jury would not have had to make if Hansen's burglary or robbery-based felony-murder instruction had been given. Therefore, we cannot find that the refusal to give the instruction was harmless. We must reverse and remand for a new trial.

Given our conclusion that defendant must be retried, it is not necessary for us to reach the other issues raised by Hansen. However, in an effort to guide the trial court, which may be faced with the same issues on remand, we make the following observations. Hansen contends that the trial court erred in instructing the jury, sua sponte and over defendant's objection, on withdrawal from the commission of a crime. Instruction No. 13 reads:

> One who has aided and abetted the commission of a crime, with knowledge of the unlawful purpose of the perpetrator of a crime, may end his responsibility for the crime by notifying the other party or parties of whom he has knowledge of his intention to withdraw from the commission of the crime and by doing everything in his power to prevent its commission.

Hansen claims that this instruction is erroneous because it shifted the burden of proof to defendant to establish this affirmative defense.

■ It is the duty of the judge to instruct the jury on relevant law. Accordingly, the judge may, over the objection of the defendant's counsel, give any instruction that is in proper form, states the law correctly, and does not prejudice the defendant. *State v. Piper*, 113 Ariz. 390, 393, 555 P.2d 636, 639 (1976). However, all instructions are subject to the general and overreaching rule that the judge must make it clear to the jury that the defendant has "no particular burden of proof but [is] entitled to an acquittal if there [is] any basis in the evidence from either side sufficient to create a reasonable doubt that the defendant [is] guilty of the offense." *State v. Torres*, 619 P.2d 694, 695 (Utah 1980). The instruction objected to does not expressly shift the burden of proof to the defendant on the question of withdrawal. But an instruction

on withdrawal that does not also describe the State's burden of proving the defendant guilty beyond a reasonable doubt can be misleading and may well raise the inference that the burden is on the defendant. The proper course would be for the court to explicitly state that the defendant has no particular burden of proof on the issue of withdrawal and that the question is whether, taking all the evidence on the issue into account, the State has shown beyond a reasonable doubt that the defendant has not withdrawn from the commission of the offense and that he is guilty of the offense charged. *Cf. In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970); *Mullaney v. Wilbur,* 421 U.S. 684, 704, 95 S.Ct. 1881, 1892, 44 L.Ed.2d 508 (1975).

■ Hansen also claims error in the instruction (No. 12) addressing accomplice liability, which stated in part:

> When two or more persons, acting with the same common mental state, jointly engage in an undertaking which amounts to an unlawful act, each is chargeable with liability and responsibility for the acts of the other, and each is guilty of the offense committed to which he has contributed just as if he were the sole offender.

Hansen claims that this instruction denied him due process because it suggested that even if the jury believed Rocco alone killed Stewart, it could still find Hansen guilty of capital murder simply because he engaged in an "undertaking" with Rocco. In other words, the instruction allowed the jury to convict Hansen of first degree murder even if it found that he did not have the required knowing or intentional state of mind respecting Stewart's killing. The State counters that the paragraph, when read in context, did not confuse the jury. Specifically, the State refers to the third paragraph of instruction No. 12, which states:

> In other words, you should find the defendant guilty of the offense if you find, beyond a reasonable doubt, either (a) that he directly committed the offense, or (b) that he intentionally or knowingly solicited, requested, commanded, encouraged, or intentionally aid[ed] another person to commit the offense.

Read as a whole, the instruction clearly required the jury to find that Hansen intentionally or knowingly aided Rocco in the offense. The parties do not dispute that Hansen was an active participant in the activities of that evening. The conflict in the evidence relates to the extent of defendant's activities and the degree of his responsibility—whether he only participated in the robbery or whether he also participated in the arson and intentionally or knowingly caused Stewart's death as a result. Under such circumstances, the giving of instruction No. 12 does not constitute error. *State v. Jeppson,* 546 P.2d 894 (Utah 1976). However, a better instruction would make it clear to the jury that, while Hansen may be criminally responsible for an act committed by Rocco, the degree of Hansen's responsibility is determined by his own mental state, not by the mental state of Rocco. *State v. Crick,* 675 P.2d 527, 534 (Utah 1983).

We need not reach defendant's other claims of error. The conviction for first degree murder is reversed.

DURHAM, J., concurs.

STEWART, J., concurs in the result.

HALL, Chief Justice (concurring and dissenting):

I concur with the majority in holding that the "other than a party" language contained in the second degree felony-murder statute[1] does not preclude prosecution thereunder of one who unintentionally causes the death of an innocent person, whether victim or bystander. However, I do not agree that it was error to refuse to instruct the jury on the offense of second degree felony-murder because I find no rational basis in the evidence to support a

1. U.C.A., 1953, § 76-5-203(1)(d) (Repl.Vol. 8B, 1978 ed., Supp.1985) (amended 1986).

verdict of acquittal of the offense charged and conviction of the lesser offense.[2]

Defendant was charged with first degree felony-murder, intentionally causing the death of another during the commission of arson.[3] In contrast, second degree felony-murder is the unintentional killing of another not a party to the underlying felony.[4]

The evidence adduced at trial was sufficient to prove that defendant hog-tied the victim and caused his death by setting the house on fire. The reasonable inference to be drawn therefrom was that defendant intended to destroy the victim and the house by fire for the purpose of covering up the crimes of burglary and robbery that had already been consummated.

Defendant offered a different factual scenario. He testified that he hog-tied the victim merely to facilitate the acts of burglary and robbery. He denied having committed arson or in any way having participated with Rocco in the commission of that offense which was the cause of death. Thus, under defendant's own theory of the case, there was no rational basis in the evidence to convict defendant of second degree felony-murder.[5] Had the jury believed defendant's version of the facts, it reasonably could have acquitted him of the offense of murder as charged because the victim died, not from defendant's acts of burglary and robbery or flight from the crime scene, but from Rocco's commission of arson in which only Rocco participated. However, had the jury so acquitted defendant, no rational basis remained in the evidence to convict him of an unintentional killing which he caused.

I would affirm the conviction and judgment.

HOWE, Justice (concurring and dissenting):

I, too, concur with the majority in holding that the "other than a party" language contained in section 76–5–203(1)(d) does not preclude prosecution thereunder of one who unintentionally causes the death of an innocent person, whether a victim or a bystander. However, I cannot concur in that part of the opinion which holds that it was error for the trial court to refuse to give the defendant's requested instruction on second degree murder occurring in the commission of robbery or burglary.

In the first place, the defendant's requested instruction was incomplete and the court could have refused to have given it for that reason alone. Although it authorized the jury to find the defendant guilty of murder in the second degree if they found that Stewart's death resulted directly from the defendant's commission of aggravated robbery, robbery, aggravated burglary, or burglary, the instruction contained no definition or listing of the elements of those crimes. Nor did the defendant submit any other requested instruction which would have filled that void. Since the requested instruction was inadequate and the jury would have been left unguided as to what constituted the elements of those crimes, the trial court did not err in refusing it.

Secondly, an instruction was given on second degree murder and manslaughter arising out of arson. Therefore, the argument fails that the jury was not given alternatives and that they were "forced" to find the defendant guilty of first degree murder arising out of an arson.

Thirdly, and more basically, the defendant was not entitled to any instruction on second degree murder arising out of the commission of burglary or robbery. The latter crimes are completely unrelated in their elements to arson. I do not believe that *State v. Baker*, 671 P.2d 152 (Utah 1983), should be stretched so far as to make murder arising out of burglary or robbery, an included offense of murder arising out of arson. It is true, as pointed

---

**2.** *See State v. Baker*, 671 P.2d 152, 159–60 (Utah 1983); U.C.A., 1953, § 76–1–402(4) (Repl.Vol. 8B, 1978 ed.).

**3.** U.C.A., 1953, § 76–5–202(1)(d) (Repl.Vol. 8B, 1978 ed.).

**4.** U.C.A., 1953, § 76–5–203(1)(d) (Repl.Vol. 8B, 1978 ed., Supp.1985) (amended 1986).

**5.** *See State v. Shabata*, 678 P.2d 785, 790 (Utah 1984).

out by the majority, that there is the common element of a killing. But I believe that is insufficient. *Baker* requires some overlap of the statutory elements of the offenses; in this case, that would require that proof of arson would necessarily prove some of the elements of robbery and burglary.

In *State v. Crick*, 675 P.2d 527 (Utah 1983), we properly held that second degree murder and manslaughter were included offenses of first degree murder. The defendant here received instructions on those included offenses. However, I would not extend the rule of *State v. Baker* so far as to make killings committed under all other possible circumstances included offenses. A lesser included offense should be closely related to the crime charged as exemplified by *State v. Baker*, supra, where we held that criminal trespass was an included offense of burglary because only the mens rea differed.

The strongest reason advanced by the defendant as to why he should have been entitled to his requested instruction is that it was his theory of the case. Our cases have uniformly held that a defendant is entitled to an instruction on his theory of the case, and trial courts have been admonished to accord defendants that right. Here, the defendant's basic theory was that he did not in any way participate in the arson. The jury was instructed that if they so found, they should acquit him. Additionally, while the prosecution charged the defendant with first degree murder, the trial court properly gave instructions on the included offenses of second degree murder and manslaughter arising out of an arson. Thus, the jury was given four choices. Neither *State v. Baker*, *supra*, dealing with lesser included offenses, nor the law affording criminal defendants an instruction on their theory of the case go so far as to give the defendant the right to an instruction on another possible crime which might have been charged, but which was not, and which is only tenuously related to the crime charged. Particularly is this true when the other possible crime is of the same degree as those on which instructions are given.

I cannot accept the defendant's argument that the jury was disposed to find him guilty of some crime because of his misconduct, and thus he was entitled to an instruction on second degree murder arising out of burglary or robbery simply to satisfy that disposition of the jury. The jury had wide discretion with the four options given them. Had the defendant's requested instruction been given, his counsel could well have argued to the jury that the prosecution presented insufficient evidence of burglary and robbery since the prosecution made no attempt to prove all the elements of those crimes, and therefore he was entitled to an acquittal. Or would the defendant have urged the jury to find him guilty of second degree murder under his requested instruction? If so, he could have accomplished that objective under the second degree murder instruction which was given.