2002 UT App 256

**STATE of Utah, Plaintiff and Appellee,**

v.

**Lester GONZALES, Defendant and Appellant.**

No. 20010270–CA.

Court of Appeals of Utah.

Aug. 1, 2002.

Barbara King Lachmar, Logan, Todd A. Utzinger, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Kris C. Leonard, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges JACKSON, GREENWOOD, and ORME.

## OPINION

JACKSON, Presiding Judge:

¶ 1 Defendant Lester Gonzales (Lester) appeals from a conviction of manslaughter, a second degree felony, in violation of Utah Code Ann. § 76-5-205 (1999). We affirm.

## BACKGROUND

¶ 2 At approximately 1:00 a.m. on July 24, 1999, Martin Baz (Martin) and Rolando Lagunas left a party where they had been drinking. As Martin and Rolando left the party, Lester and his brother Edwin Gonzales (Edwin) approached Martin and Rolando. Lester and Edwin had also been drinking. After a short conversation, Martin left to retrieve his bicycle, which had been stored in a nearby stairwell. Edwin approached Martin, and they began speaking again. While they spoke, Lester returned to the conversation. Martin insulted Lester, calling him a crude name.

¶ 3 An argument then ensued, during which Martin criticized Lester's ability to speak English. Lester punched Martin in the face, knocking him to the ground. Edwin and Lester began kicking Martin, until Rolando pulled Edwin from the fight. Edwin struggled with Rolando while Lester continued kicking Martin in the head "with all of his strength" several times. Two witnesses saw Lester kicking Martin until Martin's eyes rolled back in his head and his breathing became labored.

¶ 4 Officer Chad Carpenter of the Logan City Police Department responded to an emergency call and found Martin lying in a

driveway. Shortly thereafter, Martin died. He had a blood-alcohol level of .23. The medical examiner found multiple bruises and abrasions on Martin's body, especially around the head and face, caused by Lester's forceful blows. The blows, combined with Martin's intoxication, caused his death.

¶ 5 Edwin pleaded guilty to manslaughter, under an accomplice liability theory. Lester was charged with first-degree murder and pleaded not guilty. After the State rested its case at trial, it requested an instruction allowing the jury to consider finding Lester guilty as an accomplice to murder. The court denied this request because the State had offered no evidence warranting such an instruction. However, the court stated that it might consider an accomplice liability instruction if Lester introduced enough evidence supporting accomplice liability during the presentation of his defense. Lester had hoped to introduce testimony of Edwin's primary responsibility for the crime, thus exculpating himself under a theory of mistaken identity. However, Lester chose not to introduce that evidence because he believed it would provide the necessary foundation for an accomplice liability instruction. At oral argument, Lester's counsel characterized the threat of an accomplice liability instruction as a sort of "Hobson's choice," forcing him to choose between presenting his theory of mistaken identity and exposing himself to accomplice liability on the one hand, and foregoing the mistaken identity defense and exposing himself to principal liability on the other hand.

¶ 6 Lester ultimately chose not to introduce evidence supporting a mistaken identity theory, hoping to avoid the threat of accomplice liability altogether. When the trial court instructed the jury, however, it issued a causation instruction that stated:

> In considering whether the Defendant "caused" another's death, you need not find that the Defendant's conduct was the sole factor in producing the death. A Defendant causes the death of another if he or she was a substantial factor in bringing

about the death even if it can be shown that some other factor also contributed in a substantial degree to the death. However, in order for the Defendant to be found guilty, the other factors also contributing to the death must have been foreseeable.

Lester's counsel objected to this instruction, arguing that it amounted to a disguised accomplice liability instruction, and that Lester had no notice in the information of possible exposure to accomplice liability. The trial court overruled the objection, and the jury ultimately convicted Lester of manslaughter, a lesser included offense.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Lester challenges the trial court's rejection of his claim that due process required the State to provide notice in the information of its intent to pursue accomplice liability. "Whether an information provides sufficient notice is a question of law. Accordingly, we review this question for correctness." *State v. Preece*, 971 P.2d 1, 4 (Utah Ct.App.1998). Further, Lester challenges the trial court's causation instruction, arguing that "it was the functional equivalent of an accomplice liability instruction."[1] "Determining the propriety of the instructions submitted to the jury presents a question of law, and we therefore review the trial court's instructions under a correction of error standard." *Ames v. Maas*, 846 P.2d 468, 471 (Utah Ct.App.1993). We will affirm the jury instructions when, taken as a whole, they " 'fairly instruct the jury on the law applicable to the case.' " *Id* (citation omitted).

## ANALYSIS

### I. Sufficiency of the Information

¶ 8 First, we address Lester's challenge to the trial court's denial of his claim that due process required the State to provide notice in the information of the State's intention to pursue an accomplice liability theory at trial. Lester argues on appeal that the State's failure to include notice in the information of its intention to pursue accom-

---

1. Lester originally raised a third issue regarding the trial court's refusal to take judicial notice of Edwin's guilty plea to manslaughter. Before oral argument, however, Lester filed a waiver of the issue, and thus we do not address it.

plice liability prejudiced his ability to properly present his planned defense of mistaken identity, and thus violated his due process rights.

■ ¶ 9 We conclude that no error occurred when accomplice liability was not mentioned in the State's information. Further, Lester had adequate notice of the charges against him. Lester was tried and convicted as a principal. The State did not pursue accomplice liability at trial nor in the jury instructions. When the State asked for a jury instruction regarding accomplice liability, the court denied the request because the State had not presented any evidence warranting one. Contrary to Lester's challenge, however, the court ruled in Lester's favor on this issue because the State did *not* vary from the charges contained in the information. In essence, Lester seeks relief based on lack of notice of a prosecution theory that was never brought to the jury's attention. We find it unreasonable to require the State to give notice, at a stage as early as the filing of an information, of all possible theories that might arise, including those that do not become part of the State's case. *See State v. Davis,* 963 S.W.2d 317, 326 (Mo.Ct.App.1997) (holding due process does not require State to reveal all potential theories of prosecution's case in information or indictment).

¶ 10 Rule 4(b) of the Utah Rules of Criminal Procedure requires only that an information "charge the offense for which the defendant is being prosecuted by using the name given to the offense by common law or by statute or by stating in concise terms the definition of the offense sufficient to give the defendant notice of the charge." Utah R.Crim. P. 4(b). Our supreme court has stated that an information is "legally sufficient even if it consists of nothing more than an extremely summary statement of the charge." *State v. Bell,* 770 P.2d 100, 104

(Utah 1988); *see also State v. Snyder,* 932 P.2d 120, 127 (Utah Ct.App.1997) (holding information is sufficient so long as it enables defendant to understand charge against him).

■ ¶ 11 Here, the information provided to Lester contained the charge of murder, the name of the victim, the date and place of the crime, and the relevant text of the homicide statute, Utah Code Ann. § 76–5–205. Thus, we conclude the information satisfied the constitutional requirements for adequate notice of the charges against him and that no error occurred. *See* Utah Const. art. I, § 12 ("In criminal prosecutions the accused shall have the right ... to demand the nature and cause of the accusation against him [and] to have a copy thereof....").[2]

■ ¶ 12 At oral argument, Lester presented for the first time the contention that an accomplice liability instruction would be unfair because it represents a charge completely separate from principal liability for murder. We do not agree that accomplice liability is a separate offense from principal liability such that it would require specific notice. It is well settled that accomplices incur the same liability as principals. *See* Utah Code Ann. § 76–2–202 (1999) (stating that an accomplice "shall be criminally liable as a party for such conduct"); *State v. Comish,* 560 P.2d 1134, 1136 (Utah 1977) (holding an accomplice can be charged with same offense as principal defendant). Thus, a person charged with a crime has adequate notice of the possibility of accomplice liability being raised at trial because conviction of accomplice and principal liability do not require proof of different elements or proof of different quality. *See id.* (accomplice may be charged with same crime as principal). Here, Lester was specifically forewarned that the judge might give the jury an accom-

2. In his brief, Lester rested his main argument of law on a line of cases from Nevada, which requires accomplice liability to appear in the information. *See State v. Eighth Judicial Dist. Ct.,* 116 Nev. 374, 997 P.2d 126 (2000) (State sought to amend information to add aiding and abetting theory on morning of trial); *Wright v. State,* 101 Nev. 269, 701 P.2d 743 (1985) (State actively pursued aiding and abetting theory without giving defendant notice in information); *Barren v.*

*State,* 99 Nev. 661, 669 P.2d 725 (1983) (same). The Nevada rule comprises a single-state minority position. However, the Nevada rule itself is limited to situations where the state has sought to gain advantage over the defendant by concealing or vacillating in its theory of the case. *See Randolph v. State,* 36 P.3d 424, 429 (Nev.2001) (limiting *Barren*). Thus the Nevada rule would be inapplicable here in any event.

plice liability instruction should evidence supporting one be introduced, thus satisfying the requirement that the instruction, if given, not prejudice the defendant. *See State v. Hansen,* 734 P.2d 421, 428 (Utah 1986) (court may give any instruction supported by the evidence so long as defendant is not prejudiced).

¶ 13 Next, we address Lester's argument that he was prejudiced by lack of notice of the possibility of accomplice liability being introduced at trial. The State never altered its theory of principal liability. If the State had changed its theory of the case, applicable precedent protects Lester by providing for a continuance when necessary to tailor a defense to meet the State's amended theory.

> [D]efendant did not request a continuance in order to remedy the alleged prejudice and, therefore, waived his right to complain on appeal. "[W]henever the prosecution changes its position, a defendant may seek a continuance ... [but] the failure of a defendant to seek a continuance negates any claim of surprise and amounts to a waiver of any claim of variance [in the State's theory]." Defendant's failure to request a continuance is fatal to his claim, and accordingly, we affirm the trial court's decision.

*State v. Wilson,* 771 P.2d 1077, 1085 (Utah Ct.App.1989) (second and third alterations in original) (citation omitted); *accord State v. Fulton,* 742 P.2d 1208, 1215–16 (Utah 1987).

■ ¶ 14 Lester did not request a continuance. At oral argument, Lester's counsel stated that he did not request a continuance because he did not need more time to prepare his defense. Instead, he asserted that the alleged change of position by the State thwarted his ability to present his desired defense of mistaken identity. The right to adequate notice in the information does not implicate a defendant's right to *present* a desired defense. Rather, it protects a defendant's ability to *"prepare* to meet the prosecution's changed position." *State v. Fulton,* 742 P.2d 1208, 1215 (Utah 1987) (emphasis added). "However, once a continuance is granted and the defendant is allowed sufficient time to prepare a defense, the prejudice is obviated...." *Id.* Thus, a claim of inadequate notice in the information does not im-

pact the right Lester claims was violated. Accordingly, we affirm the trial court's ruling regarding the sufficiency of the information.

## II. The Causation Instruction

■ ¶ 15 Finally, we address Lester's claim that he was prejudiced by the issuance of the causation instruction to the jury. The instruction allowed the jury to convict Lester even if "some other factor also contributed in a substantial degree to the death." Lester argues that he was unfairly prejudiced by this instruction because "it allowed the State to argue accomplice liability without having given defendant notice of its intention to do so prior to trial."

■ ¶ 16 Generally, when an instruction correctly states the law and does not unfairly prejudice the defendant, there is no error. *See State v. Hansen,* 734 P.2d 421, 428 (Utah 1986) ("It is the duty of the judge to instruct the jury on relevant law .... [even] over the objection of the defendant's counsel"). We affirm Lester's conviction because he has not shown prejudice arising from the way the jury understood the instruction or acted pursuant to it. *See id.*

¶ 17 Lester's entire argument regarding the causation instruction rests on his claim of prejudice. He asserts that the instruction enabled the State to argue accomplice liability, even though the information did not allege accomplice liability, the court refused the State's request for an accomplice liability instruction, and Lester himself refrained from introducing evidence that would prompt the court to revisit that ruling.

¶ 18 Lester's argument does not persuade us. The State did not mention any connection between Lester's participation in Martin's death and this instruction. Rather, it connected Martin's intoxication to his death when explaining the meaning of the instruction. Further, Lester's own counsel referred to Martin's intoxication as "something that *contributed* to [Martin's] death." (Emphasis added.)

¶ 19 Finally, Lester argues that the instruction "allowed the State to argue accomplice liability," but he fails to point us to any argument actually made by the State that

suggested accomplice liability to the jury. Significantly, the court removed from the original proposed causation instruction language specifically addressing another human actor.

¶ 20 In sum, as the State points out,

the jury had no knowledge of any issue relating to accomplice liability. . . . [A]ny mention of that theory occurred outside the jury's presence. Consequently, even if the instruction could be read by counsel as relating to an accomplice liability theory, it could not have been interpreted that way by the jury in this case. . . .

We agree. Lester offers us no basis on which to conclude that the instruction unfairly prejudiced him by confusing the jury or giving them an improper alternative to principal liability. He wants us to assume prejudice, but all he proposes is a speculative and isolated hypothetical interpretation of the instruction. *See generally State v. Kirkwood,* 2002 UT App 128, 47 P.3d 111 (stating speculative assignments of error not supported by the record do not constitute grounds for reversal). He urges us to overturn the jury conviction without demonstrating that the "instructions and circumstances of the case" confused the jury into interpreting the instruction as he hypothesizes. *Ames v. Maas,* 846 P.2d 468, 474 (Utah Ct.App.1993). We conclude that Lester did not incur unfair prejudice stemming from the causation instruction.

¶ 21 Moreover, the causation instruction was a correct statement of the law. A defendant's acts may be found to be the proximate cause of the victim's death even if the victim "actually died as a result of the combination of [the defendant's acts] plus some other contributing factor." *State v. Hamblin,* 676 P.2d 376, 379 (Utah 1983); *accord Wren v. State,* 577 P.2d 235, 240 (Utah 1978). The unchallenged evidence shows that although Martin's intoxication played a significant part in his death, he would not have died but for the beating he received. Thus, the instruction "state[d] the law correctly," *Hansen,* 734 P.2d at 428, regarding "relevant law," *id.,* because Martin's intoxication was not the sole cause of death, nor did it supersede Lester's liability for

punching and kicking Martin. Accordingly, we conclude that the trial court correctly gave the jury instruction.

## CONCLUSION

¶ 22 Lester received sufficient notice of the charges against him when the information charged him as a principal to murder. He has not demonstrated error or unfair prejudice arising from the causation instruction. Accordingly, we affirm his conviction.

¶ 23 WE CONCUR: PAMELA T. GREENWOOD and GREGORY K. ORME, Judges.