The STATE of Utah, Plaintiff and Respondent,

v.

Verd J. ERICKSON, Defendant and Appellant.

No. 21055.

Supreme Court of Utah.

June 17, 1986.

Rehearing Denied July 29, 1986.

---

1. *Farrow v. Smith*, Utah, 541 P.2d 1107, 1109 (1975). *See also* U.C.A., 1953, §§ 76–5–203, 76–5–205.

2. Utah, 663 P.2d 60, 63–64 (1983).

Walker E. Anderson, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Roger Blaylock, Salt Lake City, for plaintiff and respondent.

**PER CURIAM:**

Defendant was charged under U.C.A., 1953, § 58-37-8(1)(a)(ii) with unlawful distribution for value of a controlled substance. A jury found him guilty as charged, and he was sentenced and placed on conditional probation. As points on appeal, he contends (1) that he was entrapped, and (2) that certain evidence used against him should have been suppressed.

Defendant is a dentist who practiced in Salt Lake County. In May 1985, the Metro Narcotics Strike Force received information that defendant was overprescribing or distributing pharmaceutical drugs to patients illegally. Undercover agent Celeste Paquette was asked to assist with the investigation. Ms. Paquette called defendant's office and made an appointment for May 24, 1985, in the assumed name of Kris Gordon. When she arrived for her appointment, Paquette filled out the requested forms and was seated in the dental chair. She immediately informed defendant that she did not have a problem with her teeth but was concerned about the effects her ingestion of "speed" (amphetamines) was having on them. After defendant had examined her teeth, Paquette again asked if speed is destructive to the teeth. Defendant responded by saying that amphetamines purchased from a pharmacist would probably be less harmful than those purchased on the street. Paquette indicated that she did not know a doctor who would write her a prescription. Defendant explained that he could write prescriptions but that he disliked doing so because they left a "paper trail." Nevertheless, he said he would consider it and asked Paquette to return at 5:00 p.m.

When she went back to the office at 5:00 p.m., the receptionist said the doctor was still working on a patient and asked Paquette to return at 6:00 p.m. Paquette

returned later as requested and talked with defendant. He asked what she would be interested in. She reminded him that he had said he could write a prescription for an amphetamine. Defendant said he did not really want to write a prescription and instead offered her thirty amphetamine pills from a small bottle. He said he wanted street value for the drugs and exchanged them for $60 in cash offered by Paquette. Defendant stated that he would not be back to the office until the following Friday (May 31) and that if Paquette wanted more of the drugs, they could talk then.

On May 31, Paquette went to the office at about 5:00 p.m. and was again asked to return at 6:00 p.m. When she returned, she met with defendant and he asked how she liked the pills she had purchased previously. They then negotiated a larger transaction: 1,000 amphetamine pills and 300 doses of liquid "demerol" (meperidine) for $5,000. He also asked whether she would be interested in purchasing some valium. Paquette said she did not use that drug, but she would check with her friends to see if they were interested. Defendant suggested that she come to the office on Monday, June 3, on the pretense that she was there to have her teeth cleaned. On that appointment, Paquette told defendant her friends were not interested in the valium, but she had the money for the amphetamines and demerol. Defendant told her to return to the office at 6:00 p.m. When Paquette returned at that time, defendant exchanged the amphetamines and demerol for $5,000 in cash. On this occasion (and during most of her earlier visits to the office), Paquette wore a "wire" which transmitted her conversations to fellow narcotics officers stationed outside. When the transaction was completed, approximately eight officers entered the office and arrested defendant.

Prior to trial, defendant filed a motion to dismiss the charges against him on the ground of entrapment. He also filed a motion to suppress all physical evidence seized in the course of the investigation and to suppress all statements elicited from defendant. After an evidentiary hearing, the trial court denied the motion to dismiss, ruling that defendant was not entrapped as a matter of law. The court granted, in part, the motion to suppress, but ruled admissible the evidence received by Paquette.

At trial, the issue of entrapment was put to the jury. Paquette testified that her primary purpose in approaching defendant was to attempt to purchase drugs. Defendant admitted that he sold Paquette the drugs and explained that he had done so because of financial difficulties. The jury found defendant to be guilty as charged.

■ On appeal, defendant contends that he was entrapped as a matter of law. The entrapment statute, U.C.A., 1953, § 76–2–303(1), provides as follows:

It is a defense that the actor was entrapped into committing the offense. Entrapment occurs when a law enforcement officer or a person directed by or acting in co-operation with the officer induces the commission of an offense in order to obtain evidence of the commission for prosecution by methods creating a substantial risk that the offense would be committed by one not otherwise ready to commit it. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

In *State v. Taylor*, Utah, 599 P.2d 496 (1979), we held that this statute adopted the objective standard of determining entrapment. This standard focuses solely on the fairness of police conduct (as opposed to the predisposition of a defendant to commit a crime). We have reversed convictions under this section where the police have taken unfair advantage by using "personalized high-pressure tactics or appeals to extreme vulnerability." *State v. Martin*, Utah, 713 P.2d 60, 62 (1986). In the instant case, Paquette had no personal relationship with defendant. The investigation was commenced when the police received a report of an informant that defendant might be involved in illegally distributing drugs to his patients. On her initial meet-

ing with defendant, Paquette pointedly asked if defendant could furnish her with drugs. Although she returned to defendant's office on several occasions, the visits were either at his invitation or with his consent. Under those circumstances, we cannot say that defendant was entrapped as a matter of law.

■ Defendant next contends that the evidence obtained through electronic surveillance should have been suppressed. He contends that the recorded conversations between him and Paquette should not have been admitted because she did not give him a *Miranda* warning before conversing with him. A defendant is not entitled to such a warning until custodial interrogation has commenced. *State v. Kelly*, Utah, 718 P.2d 385 (1986); *State v. Benson*, Utah, 712 P.2d 256 (1985). In the instant case, defendant was not subjected to custodial interrogation until after his arrest. Defendant also challenges the admissibility of the recorded conversations on the ground that the police did not first obtain a court order authorizing the interception of the conversations. No such order was necessary since U.C.A., 1953, § 77–23a–4(2)(b) allows the interception of wire or oral communication by a person acting under color of law "where that person is a party to the communication." *See United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); *State v. Boone*, Utah, 581 P.2d 571 (1978).

■ Defendant also urges that the trial court erroneously refused to suppress the test results on the drugs involved since the police needed a search warrant to have the seized drugs tested. We do not address the merits of this contention since defendant never objected, either in his pretrial motion to suppress or at trial, to the introduction of the test results. Although he did raise the issue in post-trial motions, this did not preserve the point for appeal. *See State v. Heaps*, Utah, 711 P.2d 257 (1985).

The conviction is affirmed.